```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT
```

STEVEN ROSENBERG,                :
                                 :
    Plaintiff,                   :
                                 :
    v.                           :       CASE NO. 3:03CV1087 (RNC)
                                 :
CAVALRY INVESTMENTS, LLC,        :
                                 :
    Defendant.                   :

RECOMMENDED RULING ON MOTION FOR SUMMARY JUDGMENT

This action arises from the defendant's attempt to collect and report to credit agencies a debt it attributed to the plaintiff. The plaintiff alleges that the defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a. Pending before the court is the defendant's motion for summary judgment. (Doc. #37.) For the following reasons, the court recommends that the motion be DENIED.

I.   FACTUAL BACKGROUND

The following facts are undisputed. The defendant Cavalry Investments, LLC ("Cavalry") is in the business of purchasing and collecting portfolios of indebtedness. (Def's. Local Rule 56(c)(1) Statement at ¶ 1.) As part of such a portfolio purchase, Cavalry acquired an account from Fleet Bank in or about December 2001. (Id. at ¶ 2.) In September 2002, Cavalry reported the debt to the three national credit bureaus -- Experian, Equifax and Trans Union. (Id. at ¶ 5.) Cavalry reported that the debt at issue belonged to

the plaintiff and that the "opening date" of the account was December 2001, the approximate date that Cavalry had acquired the account from Fleet Bank.  (Id. at ¶ 6.)

On April 23, 2003, the defendant wrote a letter to the plaintiff seeking to collect the debt.  (Id. at ¶ 4; Affidavit of Steven Rosenberg ("Rosenberg Aff.") at ¶ 10.)  The letter indicated that the debt was owed by the plaintiff's "client," not the plaintiff.  (Rosenberg Aff., Ex. 1.)  At about the same time, the plaintiff sought to refinance the mortgage on his residence with the help of a mortgage broker.  (Def's. Local Rule 56(c)(1) Statement at ¶ 7; Rosenberg Aff. at ¶ 14.)  The mortgage broker reviewed the plaintiff's credit report and noted the defendant's report of the former Fleet account.  (Def's. Local Rule 56(c)(1) Statement at ¶¶ 7-8.)  The proposed loan was approved, but subject to the condition that the plaintiff pay the outstanding debt.  (Id. at ¶ 10.)  The plaintiff -- denying that he owed any money -- refused to pay.  (Rosenberg Aff. at ¶¶ 13-14.)  He did not receive the loan.  (Id. at ¶ 14; Def's Local Rule 56(c)(1) Statement at ¶¶ 11-12.)

On May 2, 2003, the plaintiff sent a letter to the defendant disputing the debt.  (Def's Local Rule 56(c)(1) Statement at ¶ 13; Rosenberg Aff. at ¶ 13.)  On May 7, 2003, the plaintiff's counsel followed up with a letter requesting that the defendant remove its notation from the plaintiff's credit report "immediately" and

indicating that "the alleged debt, if any, is at least a dozen years old." (Def's Local Rule 56(c)(1) Statement at ¶ 14.) On or about May 20, 2003, the plaintiff submitted a dispute form to Equifax. (Affidavit of Al Cole ("Cole Aff.") at ¶ 5; Def's Local Rule 56(c)(1) Statement at ¶ 17.) The dispute form indicated that it was a "rush" request. (Def's Local Rule 56(c)(1) Statement at ¶ 17.) Equifax transmitted the form to the defendant with a request to confirm the "date of last activity" and the "opening date" of the account. (Cole Aff. at ¶ 7.) The defendant responded that the debt was "verified as reported." (Id. at ¶ 8; Def's Local Rule 56(c)(1) Statement at ¶ 17.) The defendant did not provide to Equifax either the date of last activity or the opening date. (Cole Aff. at ¶ 8.) On May 21, 2003, Equifax requested this information again, but the defendant did not respond. (Id. at ¶¶ 8-9.) As a result, Equifax removed the entry from the plaintiff's Equifax file on June 17, 2003. (Id. at ¶ 9.)

On July 7, 2003, the plaintiff's mortgage was approved with no conditions. (Def's Local Rule 56(c)(1) Statement at ¶ 27.) By this time interest rates had risen. (Rosenberg Aff. at ¶ 15.) Plaintiff elected not to close on the loan, instead waiting to obtain a more favorable interest rate. (Id. at ¶ 28.) As of July 30, 2003, the notations regarding the Fleet account were deleted from the plaintiff's credit report with Trans Union and Experian. (Id. at ¶ 23.) Ultimately, in September 2003, the plaintiff closed

3

on a new mortgage loan.  (Id. at ¶ 29.) This action, in which the plaintiff challenges the accuracy of the defendant's information, followed.

## II.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of showing the absence of any genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "A party opposing a . . . motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 324).  The court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

## III. DISCUSSION

The defendant argues first that it is entitled to summary judgment on the plaintiff's FDCPA claim because the "plaintiff is incapable of raising any genuine issue of material fact as to the

accuracy" of the information the defendant reported or verified. (Def's Mem. at 11.)  Defendant contends that during discovery plaintiff disavowed any personal knowledge regarding the details of the debt and he should not be allowed to dispute those details now. In response, the plaintiff contends that he lacks personal knowledge regarding the details of the debt because the debt was not his.  Thus, plaintiff argues, there is a genuine issue of material fact regarding whether the defendant violated the FDCPA by reporting this debt and attributing it to the plaintiff.  In support, the plaintiff submitted his affidavit in which he avers that the account the defendant reported did not belong to him and that he did not owe the debt. (Rosenberg Aff. at ¶¶ 3, 16-17.)  As further evidence, the plaintiff points the court to the documents the defendant produced in discovery that indicate that the account at issue belonged to a Steven Rosenbert –- not to the plaintiff. (See Exhibits to Affidavit of Joanne Faulkner.)  In addition, the defendant's first collection letter to the plaintiff stated that the debt belonged to the plaintiff's "client," not the plaintiff. (Rosenberg Aff., Ex. 1.)

Under the FDCPA, a debt collector may not misrepresent "the character, amount or legal status of any debt," 15 U.S.C. § 1692e(2)(A), or communicate credit information "which is known or which should be known to be false."15 U.S.C. § 1692e(8).  On the record before the court, the court cannot discern whether (1)

the account belonged to the plaintiff, (2) the plaintiff owed a debt or (3) the defendant should have known that the plaintiff did not owe the debt.  Therefore, the defendant's motion for summary judgment should be denied on that ground.

Defendant also contends that summary judgment should be granted because it merely reported dates to the credit agencies in accordance with the information it was given by Fleet Bank.  In opposition, plaintiff argues that the debt was too old to report in the first instance and the defendant should not have provided any information to the credit agencies.  "Under 15 U.S.C. § 1681c, consumer reporting agencies are prohibited from reporting adverse credit information which antedates the report by more than seven years."  Lendino v. Trans Union Credit Information Co., 970 F.2d 1110, 1111 (2d Cir. 1992); 15 U.S.C. § 1681c(a)(4).[1]

The parties have presented conflicting evidence as to the age of the debt.  The defendant offers a copy of a document that it purportedly received from Fleet Bank which appears to indicate that Fleet charged off the debt on November 18, 1997.  See Affidavit of Steven Anderson ("Anderson Aff.") at ¶ 5.  The plaintiff offers his

---

[1] The seven-year period referred to in the statute commences "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit or loss, or similar action." 15 U.S.C. § 1681c(c)(1).  Because the underlying dates of delinquency, collection activity and charge off are unclear based on the record, the court is unable to further apply this statutory section.

affidavit in which avers that he never had any dealings with Fleet. (Rosenberg Aff. at ¶ 3.)  The court is unable to determine based on the current record whether the debt was more than seven years old.[2] Therefore, a genuine issue of material fact exists regarding whether the defendant violated 15 U.S.C. § 1681c(a)(4) by reporting a debt that was too old.

The defendant next argues that summary judgment should be granted because its investigation of the dispute was adequate and the plaintiff has failed to demonstrate any cognizable damages arising out of his allegation that the defendant violated the Fair Credit Reporting Act ("FCRA").  In response, the plaintiff argues that the defendant violated the FCRA, and therefore CUTPA,[3] because

---

[2] There is additional evidence in the record which implies that the debt, to the extent it existed at all, could have been significantly more than seven years old.  For example, plaintiff testified at his deposition that approximately ten years before the events in this lawsuit occurred, he received a telephone call from a debt collector purportedly seeking to collect a debt on behalf of Fleet Bank.  (See Exhibit A to Affidavit of Sabato Fiano ("Fiano Aff.") at 15.)  After plaintiff denied that he owed such a debt, the debt collector informed him that the debt arose out of an account he had with NatWest Bank in the 1970s (and that Fleet had since acquired NatWest).  (Id. at 15-21.)  In his affidavit, plaintiff indicates that he closed this bank account with NatWest sometime in the 1980s, and that he did not owe any money to NatWest when he stopped banking there.  (Rosenberg Aff. at ¶¶ 5, 7.) Further suggestion that the debt was extremely old comes from a document that defendant allegedly received from Fleet when it acquired the debt.  That document seems to indicate that the original loan was active as early as August 26, 1976. (Anderson Aff., Ex. 1.)

[3] The plaintiff asserts in Paragraph 1 of his Complaint that he "seeks relief" pursuant to the FCRA.  Although he has not asserted an affirmative cause of action based on the FCRA (Count One asserts a violation of the FDCPA, Count Two asserts a violation of CUTPA), whether the defendant violated the statute -- an important

7

it failed to conduct a reasonable investigation after the plaintiff disputed the debt.  According to the plaintiff, had the defendant properly investigated its records it would have learned that it could not verify the date of last activity or the opening date (which had been requested by Equifax).  This, in turn, "would have averted the unfortunate consequences incurred by plaintiff, since Equifax would have been mandated to delete" the entry from plaintiff's credit report.  (Pl's Opp'n to Mtn for SJ (doc. #54) at 12.)

The FCRA requires "furnishers" of information to credit reporting agencies, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of its records to determine whether the disputed information can be verified.  15 U.S.C. § 1681s-2(b); Johnson v. MBNA Am. Bank NA, 357 F.3d 426, 431 (4th Cir. 2004); McMillan v. Experian, 170 F. Supp. 2d 278, 283 (D. Conn. 2001).  Generally, it is a question of fact for the jury as to whether a reasonable investigation was conducted.  Akalwadi v. Risk Management Alternatives, Inc., 336 F. Supp. 2d 492, 510 (D. Md. 2004); Bruce v. First U.S.A. Bank, N.A., 103 F. Supp. 2d 1135, 1143 (E.D. Mo.

---

statement of public policy -- is at least relevant to whether the defendant's actions amount to a violation of CUTPA.  A central element in the analysis under CUTPA is "[w]hether the practice . . . offends public policy as it has been established by statutes, the common law, or otherwise –- whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness."  Associated Investment Co. Limited Partnership v. Williams Associates IV, 230 Conn. 148, 155 (1994).

2000) (citing Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3rd Cir. 1997); Henson v. CSC Credit Services, 29 F.3d 280, 287 (7th Cir. 1994)).

The defendant has not offered any evidence regarding what, if anything, it did to investigate the dispute.  Instead, the defendant argues that even if the date of last activity was May 1997 and not November 1997, "that date would have permitted reporting of the relevant account information for seven (7) years thereafter, until May 2004."  Defendant's argument misses the point.  Whether the defendant's reporting of the debt ultimately was correct – an issue that is not clear based on the current record – the defendant violated the Fair Credit Reporting Act if it failed to conduct a reasonable investigation in accordance with 15 U.S.C. § 1681s-2(b).  Defendant has failed to sustain its burden of proving that it is entitled to summary judgment on this issue.

There are genuine issues of material fact regarding the plaintiff's claims under the FDCPA and the FCRA.  These disputed issues of fact preclude summary judgment on the plaintiff's CUTPA claim which, as the defendant correctly notes, is based on those same alleged violations of the FDCPA and FCRA.  (Def's Mem. of Law in Supp. of Mtn for SJ (doc. #38) at 19.)  For these reasons, the court recommends that defendant's motion for summary judgment be denied.

IV. CONCLUSION

For these reasons, the court recommends that the defendants'

9

motion for summary judgment (doc. #37) be DENIED.

Any party may seek the district court's review of this recommendation.  See 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992)(failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

SO ORDERED at Hartford, Connecticut this 29th day of August, 2005.

```
                        _____/s/_____
                        Donna F. Martinez
                        United States Magistrate Judge
```